UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

         Plaintiff,

                                Case No. 24-cr-80-pp

   v.

DAMIAN JOEL DEL VALLE-RIVERA,

         Defendant.

**ORDER GRANTING GOVERNMENT'S MOTION TO REVIEW BOND
(DKT. NO. 5) AND ORDERING DEFENDANT DETAINED PENDING TRIAL**

On April 16, 2024, the grand jury returned a three-count indictment
against the defendant. Dkt. No. 1. Count One alleges that between January
2021 and January 31, 2024, the defendant conspired with others to possess
with intent to distribute five kilograms or more of cocaine. Id. at 1. Count Two
alleges that on January 10, 2024, the defendant knowingly and intentionally
possessed with intent to distribute 500 grams or more of cocaine. Id. at 2.
Count Three alleges that on January 11, 2024, the defendant knowingly and
intentionally possessed with intent to distribute 500 grams or more of cocaine.
Id. at 3.

On May 30, 2024, the defendant was arrested in the Western District of
Washington; he was appointed counsel and appeared for an initial appearance
and detention hearing before Magistrate Judge Michelle L. Peterson. Dkt. No.
10 at 2. Judge Peterson ordered the defendant released on bond, and the

1

government asked her to stay release pending appeal, which she did. Id. at 2-3. This court also ordered a stay of release pending the government's appeal of Judge Peterson's order. Dkt. No. 4. On June 3, 2024, the government filed a motion for bond review. Dkt. No. 5. The defense responded on June 4, 2024, dkt. no. 9, and the government filed a reply on Jun 9, 2024, dkt. no. 11.

After conducting a *de novo* review of the record[1] and the parties' arguments, the court concludes that the defendant has rebutted the presumption of detention but that the government has satisfied its burden to prove by a preponderance of the evidence that the defendant poses a risk of flight and to prove by clear and convincing evidence that the defendant poses a danger to the community. The court also concludes that there is no condition or combination of conditions that will assure the safety of others or the community. The court will grant the government's motion and order the defendant detained pending trial.

## I.  **Background**

### A.  Facts Alleged in the Government's Motion

The government's motion is thirty-eight pages long. Dkt. No. 5. Most of the motion focuses on the evidence supporting the charges. That evidence shows that in the late morning of July 9, 2023, an Iowa DNR park ranger saw a

---

[1] The court does not have access to the recording or transcript of the detention hearing before Magistrate Judge Peterson. It has reviewed the government's motion (Dkt. No. 5), the defendant's response (Dkt. No. 9), the Rule 5 documents received from the W.D. Washington (Dkt. No. 10), the government's reply brief (Dkt. No. 11) and the bond study prepared by the pretrial services office in the W.D. Washington (Dkt. No. 12).

2

Chrysler Pacifica with California plates on the side of the highway near Iowa City. He approached the Pacifica in his marked vehicle; the Pacifica pulled onto the highway. The ranger followed the Pacifica as it reached speeds of 80 mph in a 70-mph zone, weaved and crossed the center line multiple times, then pulled to the shoulder of the road and stopped. The ranger activated his lights to conduct a traffic stop; the defendant was the driver and Joseph Del Valle-Martinez was a passenger in the back seat. A search of the Pacifica revealed a small amount of marijuana in the glove box, a money counting machine in a backpack in the rear passenger compartment and over $45,000 in cash in a bag behind the center console. The defendant's passport was in the same bag. The defendant told the ranger the cash was for a vacation; he later told another ranger that the cash was for a car that he didn't end up purchasing. The defendant was arrested for possession of marijuana and the rangers seized his cellphone incident to the arrest. The defendant was charged in Johnson County, Iowa with possession of marijuana; on February 9, 2024, the defendant received a deferred judgment and one year of probation.

In November 2023—four months or so after the defendant and Del Valle-Martinez had been stopped in Iowa—United States postal inspectors began seeing suspicious packages being sent from Puerto Rico to Milwaukee. Between late November 2023 and mid-January 2024, they learned of nine such packages. Two were sent on November 24, 2024 from post offices about fifteen minutes from each other in Puerto Rico; two were sent on November 27, 2023 from the same town in Puerto Rico; three were sent on December 5, 2023 from

3

post offices in Dorado and Sabana Seca, Puerto Rico; one was sent on January 10, 2024 from Toa Baja, Puerto Rico and one was sent on January 11, 2024 from Dorado, Puerto Rico.

In most instances, inspectors were able to obtain photos of the person who showed up at the mail counter in Puerto Rico to send the package; on six occasions, that person was the defendant and on three occasions, was a woman. On one occasion—the package sent from Toa Baja to Milwaukee on January 10, 2024—the person who dropped the package at the post office was Darangelys Cruz-Ortiz, the defendant's girlfriend. Surveillance revealed that on some occasions, a white Acura registered to the defendant dropped off or picked up the person sending the package. The shipping labels on the packages often reflected names of individuals who did not live at the addresses shown on the shipping labels.

Inspectors obtained warrants to search three of the packages, each of which contained a brick of what turned out to test positive for cocaine. One of the searched packages was the ninth package, postmarked January 11, 2024 in Dorado, Puerto Rico and addressed to "Maria Ortiz" at 3210A S. 12th Street in Milwaukee (the same recipient address that had been on the first, second, third and eighth packages). A photo showed that the defendant mailed the parcel at the post office in Dorado, and surveillance video revealed that he'd arrived at the Dorado post office in a white, Mitsubishi Outlander registered in his name.

Case 2:24-cr-00080-PP   Filed 06/26/24   Page 4 of 25   Document 13

Surveillance footage from the Sabana Seca, Puerto Rico post office showed that on January 12, 2024, the Mitsubishi Outlander arrived at the post office; a bearded man (not the defendant) got out and mailed a tenth package. This one was delivered to 3455 S. 3rd Street in Milwaukee.

On January 13, 2024, inspectors located the ninth package—the one postmarked January 11, 2024 in Dorado—at the Milwaukee Processing and Distribution Center. As noted, they got a warrant, searched the package and found inside a brick of a substance that tested positive for cocaine. Postal service records showed that that same day—January 13, 2024—someone had asked about the delivery status of the ninth package; this unknown person had asked for updates to be sent to the email addresses elbozz14@icloud.com and monratecepeda@gmail.com.

On January 17, 2024, instead of delivering the ninth package, inspectors delivered a mock-up of the package (complete with fake cocaine) to the Milwaukee address on the shipping label. The residence—3210A S. 12th Street—was one to which several packages had been addressed; inspectors previously had observed someone whom they believed to be Patrica Nolasco-Brito come out of the resident and take some of the earlier packages inside. Inspectors obtained a search warrant for that residence; after seeing Nolasco-Brito bring the fake package inside, inspectors executed the search warrant. They found a money counter, a large scale, a vacuum sealer, an iPhone and the fake package inside, along with Nolasco-Brito and her two minor children. Nolasco-Brito made a Mirandized statement, telling the agents that she lived

there with her fiancée, Joseph Del Valle-Martinez. (Recall that Del Valle-Martinez was the back-seat passenger in the Chrysler Pacifica the defendant was driving when he was stopped and arrested in Iowa in July 2023 with marijuana and $45,000 cash.) Nolasco-Brito said her fiancée Del Valle-Martinez had told her that the package was for his cousin; she told agents that she'd sent a photo of the package to Del Valle-Martinez after bringing it in from the porch, and recounted that she'd received similar packages and sent similar photos on five prior occasions. She said she did not open the packages and that Del Valle-Martinez didn't tell her what was in them; she said she did not know what her fiancée did with the packages. She didn't know any of the sender or receiver names from the shipping labels.

The fiancée—Del Valle-Martinez—also spoke with agents in a Mirandized interview. He told agents that he had been expecting a package from his cousin (the defendant) that day; the defendant had called him the previous day to tell him the package was coming. He told agents that the defendant routinely tracked packages to let Del Valle-Martinez know when to expect deliveries; he said he did not know the contents of the package that had been delivered that day, but that he knew it contained contraband. Del Valle-Martinez told agents that the defendant had mailed him six or seven packages from Puerto Rico that contained drugs; he said once he received a package, he'd notify the defendant, who would travel to Del Valle-Martinez's residence in Milwaukee to pick up the package and drive it to Omaha, Nebraska. Del Valle-Martinez gave law enforcement permission to search his phone, and law enforcement seized it.

6

On February 5, 2024, inspectors obtained a warrant to search an Apple iCloud account associated with the email address elbozz14@icloud.com. (Recall that this was one of the email addresses given by the unknown person who, on January 13, 2024, had enquired of the postal service about the status of the ninth package.) Information obtained from Apple revealed that this was the defendant's email address. The iCloud account information revealed receipts for the defendant's stays in Milwaukee, images of his Puerto Rico driver's license and his medical marijuana card and receipts for the mailing and tracking of the first nine packages sent in the previous months from Puerto Rico to Milwaukee, as well as photos of some of the packages and the contents. The account also contained images of the white Acura MDX and an image of a white Mitsubishi Outlander. It included a photo of the defendant standing in the alley behind his cousin's home on South 12th Street, where some of the packages had been sent.

The account contained images of bricks of cocaine (some of which the government believes were taken in the defendant's home), images of the defendant with large amounts of cash (including one taken while the defendant was posing with a U.S. postal vehicle on the street in Chicago), images of the defendant wearing what appears to be a gold ring with "Damian" encrusted on it in diamonds and a gold, roughly star-shaped belt buckle. One of the recovered photos shows a silver-and-black handgun held in the left hand of someone wearing a belt with a gold belt buckle that looks like the one the defendant wore in another photo. A second recovered photo shows someone

7

sitting at the steering wheel of a car with a black handgun in his/her lap, wearing the diamond-encrusted "Damian" ring on the third finger of the person's right hand. The government asserts that the iCloud account also included a video of the defendant firing a semi-automatic pistol at a firing range and imagines of semi-automatic pistols and assault-style rifles.

On February 20, 2024, inspectors searched the defendant's name (presumably on the Internet) and found a Facebook profile for "Rivera Joel."[2] The images of this person matched the person photographed mailing the first, second, fourth, seventh and ninth parcels (the defendant). There also was a photo of "Rivera Joel"—posted on October 9, 2022—with a person identified on Facebook as Dylan Emil Rodriguez. Inspectors learned through a law-enforcement database that a Dylan Emil Rodriguez-Burgos was from Vega Baja, Puerto Rico. This person resembled the bearded man who, on January 12, 2024, arrived at the Sabana Seca post office in the white Mitsubishi and mailed the tenth package.

On May 15, 2024, investigators saw the defendant outside of what they suspected was his residence in Kirkland, Washington. On May 22, 2024—a week later—a suspicious parcel was mailed from Toa Baja, Puerto Rico to "Maria Ortiz" at 12307 NE 150th Court, Kirkland, Washington. "Maria Ortiz" had been the named recipient of the first, second, third, eighth and ninth packages. Inspectors had the package re-directed to the postal inspector's

---

[2] The defendant's full name is Damian Joel Del Valle-Rivera.

8

office in Milwaukee; they obtained a warrant, searched the package and found thirty grams of a substance that tested positive for cocaine.

## B. Proceedings in the Western District of Washington

Before the May 30, 2024 detention hearing in the Western District of Washington, that district's Pretrial Services Department prepared a bond study. Dkt. No. 12. The report reflects that the defendant is twenty-three years old and was born and raised in Puerto Rico. Id. at 2. It explained that four or five years ago, he'd lived in Virginia for about a year, but that for most of his life, he'd lived in Puerto Rico. He'd moved to Kirkland (a suburb east of Seattle) three months before his arrest; that is, around late February 2024. Id. The defendant told Pretrial Services that he didn't travel internationally (although he had a valid passport), but that he'd traveled to Virginia, California, Chicago, Milwaukee and Florida. Id. He reported that he had been in a relationship with Darangelys Cruz-Ortiz for four years; Ms. Cruz Ortiz verified that fact and told Pretrial Services that the defendant's sisters and father live in Puerto Rico, and that she and the defendant lived with two friends. Id. She also recalled the defendant traveling to Mexico for vacation in 2022. Id.

The bond study does not mention the defendant's education, but the defendant reported that for the past two months, he'd been working at a construction company called Anning-Johnson, doing fireproofing. Id. He reported that before that, he worked with his family at a food truck in Puerto Rico. Id. He reported having some debt from making payments on a car. Id. The defendant reported suffering from asthma and sinusitis and using an inhaler

9

for his symptoms. Id. He reported suffering from anxiety, and Ms. Cruz-Ortiz told Pretrial Services that the defendant had been very depressed since his mother passed away in February 2024. Id. The defendant reported that he had a medical marijuana card from Puerto Rico and that he used marijuana one or two times per day after work to help him sleep. Id. at 3. He denied using alcohol or any other substances; Ms. Cruz-Ortiz reported that he drank alcohol only on special occasions. Id. As for a prior criminal record, the bond study shows only that on July 9, 2023, the defendant was arrested in Johnson County, Iowa for possession of marijuana, first offense and that on February 9, 2024, he received a deferred judgment and one year of probation. Id.

The Western District of Washington Pretrial Services Department concluded that there was a risk the defendant would not appear because he was on supervision at the time of the instant offense, he had limited ties to the Western District of Washington, he had a history of substance use and he possessed a valid passport. Id. It determined that the defendant posed a risk of danger because of his substance use history and the nature of the charged offense. Id. Nonetheless, Pretrial Services concluded that there were conditions of release that could reasonably assure the defendant's appearance and address the danger he poses to others and the community. Id. It suggested that Judge Peterson release the defendant on a personal recognizance bond under the supervision of Pretrial Services; that he submit to drug and alcohol testing; that he consume no drugs or alcohol; that he undergo an alcohol/drug assessment and participate in any recommended testing or treatment; that his

travel be restricted to the Eastern District of Wisconsin and the Western District of Washington; that he be required to surrender his passport; that he maintain his residence in Kirkland and not change addresses without prior approval of Pretrial Services; and that he be subject to GPS location monitoring. Id. On June 3, 2024, the government asked the court to review that order. Dkt. No. 5.

## II. Analysis

### A. Standard of Review

Under 18 U.S.C. §3145(a)(1), if a person is ordered released by a magistrate judge, the government may file a motion for revocation of the order or amendment of the release conditions. "Although [the title of the statutory section] speaks of 'review' by the district judge, the court may start from scratch." United States v. Torres, 929 F.2d 291, 292 (7th Cir. 1991).

### B. Burden of Proof

Under the Bail Reform Act of 1984, a defendant shall not be detained pre-trial unless the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). The government bears the burden of proving flight risk by a preponderance of the evidence. United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). The government bears the burden of proving danger to others or the community by clear and convincing evidence. United States v. Salerno, 481 U.S. 739, 751 (1987). A finding of either flight risk or danger to the community is sufficient to detain a

defendant awaiting trial; under the Act, a court need not find both to detain a defendant. United States v. Daniels, 772 F.2d 382, 383 (7th Cir. 1985). In determining whether a defendant is a risk of flight and/or a danger to the community, the court must consider (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves narcotics; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g).

 C. Section 3142(e) Presumption

  Under the Bail Reform Act, if the judicial officer finds that there is probable cause to believe that the defendant committed one or more of a select list of offenses, there arises a rebuttable presumption that no condition or conditions will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. §3142(e)(3). Among these offenses is an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§801 et seq.). Because the charge in Count One carries a mandatory minimum sentence of ten years and a maximum of life, the defendant faces a presumption of detention.

  The presumption "places a light burden of production on the defendant," United States v. Wilks, 15 F.4th 842, 846-47 (7th Cir. 2021), and that burden is "not a heavy one to meet," United States v. Dominguez, 783 F.2d 702, 707

(7th Cir. 1986). "Any evidence favorable to a defendant that comes within a category listed in §3142(g) can affect the operation of . . . the presumption[], including evidence of [a defendant's] marital, family and employment status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3)." Dominguez, 783 F.2d at 707. "[T]he burden of persuasion always rests with the government and an unrebutted presumption is not, by itself, an adequate reason to order detention." Wilks, 15 F.4th at 846-47. Even if the presumption is "rebutted," however, it "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." Dominguez, 783 F.2d at 707; see also Wilks, 15 F.4th at 847 (stating that "the presumption is considered together with the factors listed in § 3142(g)").

The government appears to assert that the defendant is a danger to the community; after asserting that the defendant is subject to the presumption, it states that the "level of danger to the community increases proportionately with the increase in sophistication, nature, size and extent of the drug operation," quoting United States v. Dominguez, 629 F. Supp. 701, 710 (N.D. Ind. 1986). Dkt. No. 5 at 3.

On *de novo* review, this court concludes that the defendant has met his "light burden of production" and rebutted the presumption. He is a United States citizen. At the time of his arrest, he was employed (albeit for a short period) at a construction company; he also reported having a barber's license. He has a girlfriend in the Western District of Washington who says he may live

13

with her. According to the defendant, when he moved to Washington he got an apartment and a valid driver's license. Dkt. No. 9 at 3.

The defendant also has met the light burden of production rebutting the presumption that he is a danger to the community. Again, he needs only to produce some evidence relating to one of the §3142(g) factors. The defendant has no criminal history other than the 2023 misdemeanor conviction in Iowa for possession of marijuana. The government has produced no evidence of violence. Although he admitted to using marijuana, he had a medical marijuana card and the state of Washington allows private marijuana use. This evidence is enough to overcome the "light burden of production" necessary to rebut the presumption he is a danger to the community. See Dominguez, 783 F.2d at 707 ("This evidence of economic and social stability, coupled with the absence of any relevant criminal record, at least suggests that defendants would be less likely to continue to engage in criminal activity while on pretrial release.").

Although the court concludes that the defendant has met his light burden of production to rebut the presumptions, the presumptions still "remain[] in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in §3142(g)." Dominguez, 783 F.2d at 707; see also Wilks, 15 F.4th at 847 (stating that "the presumption is considered together with the factors listed in § 3142(g)").

D.    Section 3142(g) Factors

It appears that the government bases its detention request largely on an argument that the defendant poses a danger to the community; in its reply brief, it asserts that "[d]rug-trafficking offenses are inherently dangerous." Dkt. No. 11 at 6. Toward the end of its reply brief, however, the government also argues that the defendant's "proffered facts do not allay concerns about the defendant's risk of nonappearance in this district." Id. at 14. It asserts that "[a]side from having contraband-laden parcels mailed to Milwaukee, the defendant has no meaningful ties to the Eastern District of Wisconsin." Id. The court will evaluate the §3142(g) factors both as to risk of flight and as to dangerousness.

1.    *The Nature and Circumstances of the Offense Charged*

This factor asks the court to consider, among other things, whether the offense charged is a crime of violence or a involves narcotics. The indictment does not charge the defendant with crimes of violence, but the charges do involve narcotics, and a significant amount of them. The seriousness of the nature and circumstances of the offenses charged is exemplified by the fact that Count One exposes the defendant to a mandatory minimum sentence of ten years. The grand jury found probable cause to believe that between January 2021 through January 2024, the defendant conspired with others to possess with intent to distribute and to distribute more than five kilograms of cocaine, and that on two occasions in January 2024, he possessed more than 500 grams of cocaine. Drug offenses are serious by nature; drug offenses

15

involving the amount of cocaine the defendant is alleged to have shipped, or had shipped, from Puerto Rico to Wisconsin are more serious.

        2.     *The Weight of the Evidence Against the Person*

        The weight of the evidence against the defendant is, at this early stage, significant. He was photographed taking several of the packages to the post office in Puerto Rico, where he admits that he lived until two months prior to his arrest. His girlfriend was photographed taking one of the packages to the post office. The cars that delivered him and others to the post office in Puerto Rico were registered to the defendant. His iCloud account included images of some of the packages, as well as receipts and documentation related to their mailing. The recipient of the packages on the Wisconsin end was the defendant's cousin, who admitted to police that the defendant would send him packages, track them and come pick them up. The defendant reports that in Puerto Rico, he worked with his family at a food truck, and that he has a barber's license. Neither of these jobs seems likely to produce exorbitant income for a twenty-three-year-old man, but photos from the iCloud account show the defendant sporting large stacks of currency and wearing what appear to be a gold-and-diamond ring and a gold belt buckle. The iCloud account shows travel receipts to Milwaukee. And the court has recounted that the defendant had not one but two vehicles registered to him.

        3.     *The History and Characteristics of the Person*

        The court understands that defense counsel has likely had little opportunity to talk with the defendant in depth about his history and

characteristics, and the bond study prepared in W.D. Washington is not particularly detailed or revealing. That said, several of the factors in that report weigh against a finding that the defendant constitutes a danger to the community. Practically speaking, he has virtually no criminal history. The defendant was employed at the time he was arrested. He lived with his girlfriend and some friends at an apartment in Kirkland, Washington. He has family in Puerto Rico. While he admitted to using marijuana, he had a medical marijuana card and at the time of his arrest was living in a state where private marijuana use is legal.

On the other hand, the information weighs in favor of a finding that the defendant presents a risk of flight. Other than having a cousin in Milwaukee and having visited Milwaukee, the defendant has no ties to the Eastern District of Wisconsin. His ties to the Western District of Washington are loose. He moved to Washington only a couple of months before his May 2024 arrest. While he had a job there, he had it for only a short time. Though his girlfriend lives in Washington and says he could live with her if released, the court has explained that she was photographed mailing one of the packages from Puerto Rico. The bulk of the defendant's family appears to live in Puerto Rico, where he lived for most of his life. He has traveled to other states, including Wisconsin and California. There is little connecting him to the Western District of Washington or the Eastern District of Wisconsin, and much connecting him to Puerto Rico.

4. *Nature and Seriousness of the Danger to Any Person or the Community That Would be Posed by the Person's Release*

This factor requires the court to determine whether the government has proved that the defendant poses a danger to any person or the community if released. The threat that defendants charged with drug offenses pose is to the community. See United States v. Cervantes, 951 F.2d 859, 861 (7th Cir. 1992). The court must consider the risk that the defendant "poses to the community in the future, not simply the riskiness of his alleged offense." United States v. Lewis, Case No. 23-3127, 2023 WL 4351244, at *1 (7th Cir. July 5, 2023) (citing Dominguez, 783 F.2d at 706-07).

The government appears to argue that because it has evidence that the defendant shipped drugs from Puerto Rico to Wisconsin on several occasions in the past, there is a danger that he will do so in the future. That, in itself, is not enough. If it were, every person charged with a narcotics offense would be detained, a result not contemplated by the Bail Reform Act. The government asserts that the defendant was "the leader of a multi-district drug-trafficking conspiracy responsible for distributing multi-kilogram quantities of cocaine since at least January 2021." Dkt. No. 5 at 3. This is a significant overstatement of the evidence presented in the government's motion. The evidence shows that the defendant and a small number of other people (including his girlfriend) mailed packages from Puerto Rico, addressed to fictitious recipients in Wisconsin, on nine occasions between November 2023 and January 2024. Three of those packages were searched and found to contain a single kilo of cocaine each. The defendant's cousin in Milwaukee

18

received the packages and confirmed their receipt for the defendant. The defendant had photos in his iCloud account of himself with money and jewelry. While the evidence certainly strongly implies that the defendant and others mailed multiple kilograms of cocaine from Puerto Rico to Wisconsin, it is a stretch to argue that it shows that the defendant was a "leader" or that he "spearheaded" a "cocaine distribution network."

More concerning is the fact that the defendant's iCloud account contained photos of guns. In its initial brief, the government provided the two photos the court has described—someone holding a handgun and wearing a belt buckle strikingly similar to one the defendant is seen wearing in another photo, and someone sitting in the driver's seat of a car, wearing the gold-and-diamond "Damian" ring and holding that gun. Circumstantial evidence indicates that the person holding the gun in those photos was the defendant, but as the defendant points out in his brief, he has no felony convictions and the photos do not show the gun in proximity to drugs. In its reply brief, the government explains that there were other photos. One photo was of two "assault-styled rifles" on what the government concludes from other photos is the defendant's kitchen counter. Dkt. No. 11 at 7-8. Also on the counter are high-capacity magazines, and the government says that the rifle in the lower part of the photo has a converter switch; that would render the weapon illegal to possess. Id. The government also argues that the iCloud account includes videos of individuals firing assault-style rifles, and that one of those videos

19

shows someone "who appears to be the defendant" firing a fully automatic rifle from the interior of a car into a wooded area. Id. at 8-9.

The defendant has not been charged with gun offenses. He is not a prohibited person. The government has not provided any evidence that these guns were in proximity to drugs, or any evidence showing that they were possessed in connection with the drug shipments (even if the defendant did possess them). But the evidence gives rise to an inference that either the defendant possessed a fully automatic rifle or that he associated with others who did.

The evidence that most concerns the court, and relates both to risk of flight and dangerousness—is evidence of the defendant's arrest in Iowa in July 2023 and evidence of a tenth package sent to Kirkland, Washington in May 2024. When the defendant was stopped in Iowa in July 2023, his cousin Del Valle-Martinez was in the car with him. Law enforcement found $45,000 in the car, along with the defendant's passport. The defendant gave conflicting stories about why he had the cash, telling one ranger that he had it for a vacation and another that it was for a car he'd decided not to purchase. At this time, the defendant still lived in Puerto Rico, presumably making his income from working with his family at the food truck and, perhaps, being a barber.

The defendant walked away from this encounter with nothing more than a marijuana possession charge, but as the government implies, one might have expected the incident to cause him to avoid risky circumstances going forward. Yet four months later, on November 24, 2023, the defendant was photographed

in two, separate post office locations in Puerto Rico shipping packages to "Maria Ortiz" at his cousin's South 12th Street address in Milwaukee. The images of these packages were in the defendant's iCloud account. Seven more packages were shipped over the next two months, including the package that was intercepted, filled with fake cocaine and delivered to the defendant's cousin Del Valle-Martinez on January 17, 2024. The logical inference is that the defendant learned that that package had been intercepted, that his cousin's Milwaukee home had been searched and that his cousin's phone had been seized.

The defendant advised pretrial services in the Western District of Washington that he'd moved from Puerto Rico to Washington about two months prior to his May 30, 2024 arrest—in other words, in mid- to late February, 2024. That would have been a month to a month and a half after the search of the defendant's cousin's house and the seizure of his phone. It is unlikely a coincidence that the defendant chose to move when he did. Postal inspectors then discovered that on May 22, 2024—two and a half months after the defendant moved to Washington—a package was shipped from Toa Baja, Puerto Rico to "Maria Ortiz" at the defendant's new address of 12307 NE 150th Court in Kirkland, Washington. This was the package that contained thirty grams of cocaine.

This chain of events provides clear and convincing evidence that after being stopped with $45,000 in cash by Iowa law enforcement, after being convicted of a minor offense in Iowa and being put on probation and after his

21

cousin's house—the house to which he'd shipped at least one package containing a kilogram of cocaine—was searched, the defendant moved over 3,500 miles across country and then resumed shipping cocaine from Puerto Rico. It provides clear and convincing evidence that the defendant continued to be involved in shipping cocaine despite two events showing that his activities were the subject of law enforcement interest. It shows by a preponderance of the evidence that the defendant moved from Puerto Rico to another state to avoid detection, and that he had sufficient resources to be able to do so.

The fact that the evidence shows the defendant was involved in shipping drugs into Wisconsin does not show by clear and convincing evidence that he presents a future danger. Nor does the fact—concerning as it is—that the defendant had photos of automatic weapons in his iCloud account show by clear and convincing evidence that he poses a danger to the community. But this series of events shows by clear and convincing evidence that the defendant is likely to continue to involve himself in drug activity despite knowing that he is a subject of law enforcement interest, and it shows by a preponderance of the evidence that the defendant is likely to go somewhere other than where he is known to have resided in the past to avoid prosecution.

E.    Conditions That Will Reasonably Assure Appearance and Safety

The government must prove not only that the defendant poses a danger to the community but also that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community[.]" 18

22

U.S.C. §3142(e).[3] Pretrial services in the Western District of Washington proposed several conditions, but the court cannot conclude that these conditions or any combination of them will assure the defendant's appearance for court in the Eastern District of Wisconsin or the safety of the community.

Pretrial Services recommended several conditions: that the defendant submit to drug and alcohol testing; that he consume no drugs or alcohol; that he undergo an alcohol/drug assessment and participate in any recommended testing or treatment; that his travel be restricted to the Eastern District of Wisconsin and the Western District of Washington; that he be required to surrender his passport; that he maintain his residence in Kirkland, Washington and not change addresses without prior approval of Pretrial Services; and that he be subject to GPS location monitoring. The drug testing/treatment condition gives the court little assurance—the evidence before the court shows only that the defendant uses marijuana occasionally. Even if the defendant stopped using marijuana while on pretrial release, that would not reasonably assure either his appearance or the safety of the community. Restricting the defendant's travel to the Western District of Washington and the Eastern District of Wisconsin would not address the fact that despite obtaining his lawful income from working at a food truck, the defendant was able to marshal the resources to have two cars, to travel from

---

[3] The government—assuming that the defendant had not rebutted the statutory presumption—did not discuss whether any condition or combination of conditions would reasonably assure the defendant's appearance or the safety of the community.

Puerto Rico to Wisconsin and other states and to move himself from Puerto Rico to Washington. It does not address the fact that the defendant still has significant family in Puerto Rico. It does not address the fact that the evidence shows the defendant shipped drugs to both districts. Nor would ordering the defendant to maintain his address and not to change addresses without notifying pretrial services address these concerns. GPS monitoring would not prevent the defendant from having others ship packages for him (as the evidence implies that he may have done). The court has considered that it could order the defendant to surrender his passport. But he does not need a passport to return to Puerto Rico, or to move to another state.

The court concludes that there are no conditions or combination of conditions that will reasonably assure the defendant's appearance or the safety of the community.

The court is mindful of the defendant's argument that if he remains detained pending trial, it will take time for him to be brought to Milwaukee for court and it will be difficult for defense counsel to work with him on his defense. If the defendant has additional information to provide to the court, or has additional conditions to suggest, the court is more than willing to reconsider.

**III.    Conclusion**

The court **FINDS** that the defendant successfully rebutted the operative presumptions of detention. The court **CONCLUDES**, however, that the government has proved by a preponderance of the evidence that the defendant

poses a risk of flight and has proven by clear and convincing evidence that the defendant poses a danger to others and the community.

The court **GRANTS** the government's motion for review of Magistrate Judge Peterson's order of release. Dkt. No. 5.

The court **ORDERS** the defendant detained pending trial.

Dated in Milwaukee, Wisconsin this 26th day of June, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**